UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**KAREN BOWEN**
**DALE BOWEN, on behalf of themselves and**
**all others similarly situated**

*Plaintiff*

~Vs~

*COMPLAINT*

**MEL S HARRIS & ASSOCIATES LLC**

*JURY TRIAL DEMANDED*

*Defendants*

Albany County          }
New York State         } ss:

**KAREN BOWEN & DALE BOWEN** , the plaintiffs,   complain of the defendant by alleging
and showing that:

### NATURE OF ACTION

1.      This is an action to enforce the Fair Debt Collection Practice Act 15 USC
§1692 *et seq*, (FDCPA) and New York State General Business Law §349 and
related claims.

### JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction under 15 USC §1692k (d) and 28
USC §1331.  The Court has supplemental jurisdiction per 28 USC §1367 to
hear and adjudicate plaintiff's state law claims.

3.      Venue is proper in this district per 28 USC §1391 (b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district. Venue is also proper in this district because  plaintiff lives in this district, defendants transact business in this district and the acts complained of happened in this district.

## PARTIES

*Plaintiffs*

4.      At all relevant times:

   a.   The plaintiffs,  Karen and Dale Bowen,  reside in Copenhagen,  Lewis County, New York State, within this district, and

   b.   Each plaintiff  is  a" consumer" as that term is defined in the FDCPA, in that each is  an individual who  allegedly owes a debt to another. Each  plaintiff  is a "consumer" as that term is used in the New York State General Business Law 349.

*Defendant*

5.      Upon information and belief, at all relevant times, the defendant  **Mel S Harris & Associates LLC :**

   a.   Is a limited liability company organized and existing under the laws of New York , with a principal place of business at  New York, New York.

   b.   Is a "debt collector" as that term is defined in the FDCPA;

   c.   Transacts business in this district;

    d.  Is regularly engaged, for profit, in the collection of  defaulted consumer debt from the holders of such debt  for others   by use of the mail, telephone, or the courts of the State of New York and other means of interstate commerce.

## FACTUAL ALLEGATIONS

6.    On or about 3/16/07 MSH took a default judgment against plaintiffs  in the Supreme Court for Lewis County in a consumer credit transaction on behalf of LR Credit 11 LLC.  It was alleged LR Credit owned a Direct Merchants Bank credit card in the Bowens'  names that they  had defaulted on in 2003.

7.    A true  copy of the docket  is attached at Exhibit 1.

8.    The debt, whether or not plaintiffs  owe it, is an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, hence is a "debt" as defined by the FDCPA.

9.    On or about 11/22/11, plaintiffs  received  a letter ( "Letter") from MSH telling us , essentially, that it would vacate the judgment against us if we signed a stipulation ( " stip").

10.    A true copy of the Letter and Stip are attached as Exhibits 2 and 3, respectively.

11.     As plaintiffs  are informed and believe, MSH sent them the Letter and Stip

        pursuant to an  " Assurance of Discontinuance pursuant to Executive Law

        63(15)"  ( "Assurance")  entered into between MSH and the Office of the

        Attorney General on or about 5/2/11.


12.     A true copy of the Assurance is attached to this as Exhibit 4 and its content

        is incorporated by reference.


13.     Among the findings recited by the Attorney General in the Assurance [1]  was

        that MSH employed a process server , We Serve it for You Process Serving

        Agency LLC,  to whom MSH referred 38, 258 legal papers for service in

        consumer credit transactions in New York State from 2007 to 2009.  MSH

        used the affidavits of service from the Agency to obtain default judgments

        against consumers.   However, the Attorney General believed more than

        half of those affidavits were or could be false, infecting the defaults

        obtained. [2]


14.     The judgment obtained against plaintiffs  on 3/16/07 was obtained, as

        plaintiffs  are informed and believe, in the manner criticized by the Attorney

        General.

---

[1] but not admitted to by MSH
[2] Ex 4, ¶¶ 14-24, of which we ask  the Court to take Notice

15.     The Letter contained a preface in underlined, bold-face,  capital -letter print
as follows:

**THIS OFFICIAL LETTER IS BEING SENT TO YOU AT THE DIRECTION OF THE NYS OFFICE OF COURT ADMINISTRATION AND NYS ATTORNEY GENERAL ERIC T SCHNEIDERMAN"**

16.     In fact,  the Office of Court Administration had nothing to do with the
Assurance or the Letter.

17.     In fact, as plaintiffs  are now informed and believe, and contrary to the
Letter's implication,  the Letter was not issued by either the Office of Court
Administration or the Office of the  NYS Attorney General so it was not
"official" in any sense of the word.

18.     In fact, the Letter was the voluntary effort of MSH to avoid civil prosecution
by the Attorney General.

19.     The Letter said that if plaintiffs  signed the Stip,   MSH could sue plaintiffs
again for the same debt.

20.     The Letter also said that if plaintiffs  did not sign a  Stip,   the judgment
would stand.

21.    The Letter did not say that that plaintiffs  had the independent right  to ask
the Court to vacate the judgment or that plaintiffs  had additional rights to
do so under CPLR §5015(a), CPLR §317 and CPLR §5015(d).

22.    The Letter  did not say that if plaintiff  exercised those rights they  might
avoid a second lawsuit.

23.    The Letter did not say that by signing the stip  plaintiffs  would  be waiving
a statute of limitations defense in a second lawsuit or waiving a defense
under CPLR 205.

24.    Defendants failed to disclose these rights in the Letter even though they
knew,  and were in the better position to know,  that  consumers like the
named plaintiffs   had other ways to deal with the judgment besides
signing the stipulation.

25.    With the Letter dressed as " official", and without  disclosure of  these
additional rights  in the Letter  the consumer-  least sophisticated and
otherwise,- was led to believe the only way to vacate  the judgment was to
sign the stipulation ( with all its implications) and face a second lawsuit.

26.     MSH, as plaintiffs are informed and believe, sent the Letter and
        Stipulation in the same form to thousands of other consumers within this
        District.

27.     Because MSH faced the plaintiffs with an "all or nothing" proposition,
        plaintiffs signed the Stip.

28.     In reliance on MSH's promise to vacate the judgment, plaintiffs signed the
        Stip .

29.     A true copy of the Stip the plaintiffs signed and returned to MSH is attached
        as Exhibit 3.

30.     On or about 1/4/12, MSH then represented to plaintiffs that it had vacated
        the judgment.

31.     Thereafter Dale Bowen applied for a business loan from Watertown
        Savings Bank in the amount of $15,000 to purchase a wood processor for
        his wood product business.

32.     Plaintiffs had a preexisting banking relationship with Watertown Savings
        Bank.

33.    However, MSH had not vacated the judgment as it claimed.

34.    As a result, on or about 3/5/12, the Bank denied Dale Bowen his business

loan and , as plaintiffs are informed and believe,  the Bank would have given

him the loan but for the judgment.

35.    At a time between 3/5/12  and 4/25/12, Dale Bowen called MSH to ask why

the judgment had not been vacated as promised. He spoke to Shelby

Benjamin, an attorney with MSH, who told Mr. Bowen she would have

someone call him back.  At a time and by a person better known to MSH, a

man from MSH called Dale Bowen. Mr. Bowen asked  why the judgment had

not been vacated as promised. The man responded it was being handled

differently, or words to that effect. When Mr. Bowen asked him why it was

being handled differently, the man said, in a derisive and menacing tone,  "

Because you ( Bowen) don't have the brain capacity to understand we are

suing you for money your wife welshed  on" or words to that effect.  After

being shocked by these words,  Mr.  Bowen hung up.  As we are informed

and believe, the man Dale Bowen talked with is an employee of MSH and

was acting in the normal course of his employment.

36.     On or about 4/25/12  MSH  "re-served"  the plaintiffs   with a copy of the summons and complaint .

37.     In fact, the judgment was not vacated at that time.

38.     In fact, the judgment was not actually vacated until  July 2012, *after* MSH had sued the plaintiffs   a second time and then only *after* plaintiffs  hired a lawyer.

39.     Defendant's   actions were at all times herein intentional, knowing, and persistent.

40.     Plaintiffs   became increasingly  angry, anxious, abused,  annoyed, compromised, confused, humiliated, worried and  bothered, feelings which have continued from  11/21/11 to this day.

## CLASS ALLEGATIONS

41.     The plaintiffs, Karen Bowen and Dale Bowen, bring this action on behalf of all others similarly situated as a class action pursuant to  Fed. R. Civ. P.  Rule 23,  as it relates to Count 1 and Count 3, on behalf of two classes of all other persons similarly situated.

42.     Plaintiffs seek to represent the  first class (the "Letter class") consisting  of all

persons who satisfy the following criteria:


(i)     residents of the Northern District of New York;
(ii)    who were identified by MSH  per paragraph 28 of the     Assurance;
(iii)    who received the Letter and stip;
 (iii)   during the one year period prior to the filing of the complaint  in this
action.


43.     Plaintiffs seek to represent the  second class (the "false vacatur class" )

consisting  of all persons who satisfy the following criteria:


(i)      residents of the Northern District of New York ;
 (ii)       who were identified by MSH per paragraph 28 of the Assurance;
(iii)      who signed and returned the Stip to MSH in a timely manner;
(iv)    but whose judgments were not vacated by MSH at any time;
(v)      during the one year period prior to the filing of the complaint  in this
action


44.     On information and belief, each class includes thousands of members and is

sufficiently numerous that joinder of all members is impractical.


45.      There are questions of law and fact common to each class, which common

issues predominate over any issues peculiar to individual class members.

The principal common questions include:


a)   whether MSH made a false, misleading and/or deceptive statements
     in the so-called "official Letter" in its collection of a debt from plaintiff
     and other consumers like plaintiff ;

      b) whether  MSH intended to vacate the judgments;

      c) whether such false, misleading and deceptive acts were knowingly made and /or intentional; and

      d) whether such false, misleading and deceptive acts were  material in nature.

46.     The plaintiff's claims are typical of the claims of the other members of each class.  All of the claims are based on the same factual and legal theories and plaintiffs, together with each class member, have been subjected the same false and deceptive communications and acts by MSH  and all have been damaged in the same manner.

47.     These plaintiffs   will fairly and adequately represent the interests of the class members.  Plaintiffs  have  retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why these plaintiffs  and their  counsel will not vigorously pursue this matter.  Plaintiffs have no interests adverse to those of any of the other class members.

48.      Certification of these classes pursuant to Fed. R. Civ. P.  Rule 23(b)(3) is appropriate.   A class action is the only appropriate means of resolving this

controversy because the class members are not aware of their rights.  A failure of justice will result without a class action,.  Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy presented by this complaint.

49.    Certification of these classes under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that MSH has acted on grounds generally applicable to each class , so the  making of declaratory relief with respect to the classes as a whole is appropriate.

## COUNT 1
*(Violation of the Fair Debt Collection Practices Act)*

50.    Plaintiffs  repeat the allegations of the preceding paragraphs.

51.    MSH  acts of  sending  the Letter in its form and the Stip,  violate the FDCPA because:

    i.   The Letter deceives and seeks to mislead the  debtor by falsely stating it was an "official " letter sent or issued or authorized  by two state agencies when , in fact, it was not, in violation of 15 USC §§ 1692e , 1692e(1), 1692e(2)(A), 1692e(9), 1692e(10), 1692e(14), and 1692f,

    ii.  MSH designed and furnished the Letter in its form  knowing the Letter would be used to create the false belief in a consumer-debtor

that a person other than the creditor of such consumer, i.e., the Office of Court Administration and the Office of the Attorney General ,   was participating in the collection of or in an attempt to collect the debt such consumer allegedly owes MSH's client, when in fact those two agencies were not  so participating. in violation of 15 USC  1692j (a);

iii.  The Letter deceives and seeks to mislead the debtor into signing the Stip without disclosing that the debtor had an independent  recourse to vacate the judgment, in violation of !5 USC §§ 1692e, 16923(2)(A), 1692e(10) and 1692f;

iv.  the Letter seeks to deceive and mislead by promises that if the debtor signs the stip MSH will have the default judgment vacated, when MSH had no intention of doing so, in violation of 15 USC §§ 1692e, 1692e(5) and 1692(10) and 1692f

## COUNT 2

*( Violation of the Fair Debt Collection Practices Act - harassment)*

52.   Plaintiffs  repeat the allegations of the foregoing paragraphs.

53.   The acts of MSH's employee in the  phone call  referred to in paragraph 35 of saying Dale Bowen "lacked the mental capacity to understand" what was going on was abusive in violation of 15 USC 1692d.

## COUNT 3

*(Violation of New York State General Business Law §349)*

54.   Plaintiffs  repeat the allegations of the foregoing paragraphs .

55.     Defendant has acted with a pattern and practice of deception in its business pursuit of collecting consumer debts from plaintiffs and thousands of others like plaintiff who reside in the district following defendant's execution of the Assurance with the Attorney General with its use of the Letter and Stip .

56.     Such acts, i.e., calling without telling him/her of the other avenues of relief. available.

1.      Such acts, i.e., the Letter "official " and invoking the OCA and OAG when in fact neither agency had anything to do with the Letter, designing and disseminating the Letter in its form with the intent to deceive plaintiffs and affected consumers like plaintiffs into thinking the OAG and OCA were participating in the collection actions against them when, in fact, they were not, inducing plaintiff and other consumers like plaintiff to sign the stip by not advising them of the other rights plaintiffs might have under law to attack or defend the judgment , by inducing plaintiff and other consumers like plaintiff to sign the Stip with a promise to vacate the judgment if they did when MSH had no intention of actually doing so or failing to take the steps necessary to do so, thus , creating a false , misleading and deceptive position that the only avenue of relief from the default judgment infected by the acts of MSH's process server was to sign the Stip when MSH knew or was in the better position to know plaintiff and other consumers had other ways to do so, are false and/or deceptive in a material way as MSH could not otherwise collect money for their clients from the consumers MSH identified to the OAG in the Assurance without them, and their effect is to dupe consumers into defending unnecessary lawsuits by waiving certain rights and giving up others, thus are material practices of deceit.

57.     Such deception by MSH was, on information and belief,  knowing and
         intentional.

58.     Such deception happened , as plaintiffs are informed and believe, every
         time  MSH sent  out the Letter in this district.

59.     Plaintiffs , and others who have received or  acted on letters like the Letter
         sent from  MSH  have been damaged.

**COUNT 4**

*( Breach of Contract)*

60.     Plaintiffs  repeat the allegations of the foregoing paragraphs.

61.     The Stip was a contract between MSH and these plaintiffs.

62.     As stated above, MSH offered to have the default judgment from 2007
         vacated in consideration of  the plaintiffs; signing  the stip and thus
         agreeing to be sued a second time, this time by mail.

63.     Relying  on MSH's promise to vacate the judgment, the plaintiffs  signed the

        Stip and received a summons and complaint in April 2012.


64.     However, MSH breached the Stip by failing to have the judgment vacated.


65.     As a result, the plaintiffs  suffered actual and consequential damages in that

        1) they had to hire a lawyer in order to get  a vacatur of the judgment , and

        2) Dale Bowen lost a business loan and the

        opportunities that sprung from that loan  because the judgment appeared

        of record after the time MSH had represented to the plaintiffs   it  had

        vacated the judgment.


**JURY DEMAND**

I ask for a trial by jury of all issues

**WHEREFORE**, we ask the Court for judgment:

a. declaring MSH's actions in violation of the FDCPA and New York State General Business Law §349;

b. awarding plaintiffs actual damages and statutory damages against the defendant on Counts 1 and 2 per 15 USC §1692k;

c. awarding plaintiffs actual , statutory damages and punitive damages against the defendant per GBL §349;

d. awarding plaintiffs actual and consequential damages in an amount determined at trial on Count 4

e. awarding plaintiffs costs and disbursements of this action, and reasonable attorney's fees as allowed by law; and

f. such other, further and different relief as the Court finds proper here.

DATED:     November 18, 2012

*s/ Anthony J Pietrafesa*

**ANTHONY J PIETRAFESA ESQ. (102368)**

*Attorney for Plaintiffs*
210 Bell Court
Schenectady NY 12303
518.218.0851
Fax: 518.514.1241
ajp@ajp1law.com

s/ Donald Boyajian Esq

**DREYER BOYAJIAN LLP**
*Attorneys for Plaintiffs*
*75 Columbia Street*
*Albany NY 12210*
*518-478-2762*
*fax: 518-463-4039*
*dboyajian@dreyerboyajian.com*

VERIFICATION


New York State    )
Albany County    ) ss:


Karen Bowen and Dale Bowen , being duly sworn, deposes that:  We are  the plaintiffs
this action, we have read the complaint and the factual allegations contained in the
complaint are true to our  personal knowledge except for those alleged on information
and belief, and as to those allegations we believe them to be true.


*s/ Karen Bowen*

_____ ____

Karen Bowen


*s/ Dale Bowen*

_____

Dale Bowen



Sworn to and Subscribed

Before me on  11/18/2012


*s/ Anthony J. Pietrafesa*

_____

Anthony J. Pietrafesa-Notary Public
Qualified in Albany County 02PI6157974
My Commission expires 11/20/2014